UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ROYALE ROBINSON,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     Civil Action No. 04-1405 (RWR)
                                    )
ELAINE L. CHAO, Secretary of Labor, )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

This matter comes before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the entire record of this case, the Court will grant the motion.

BACKGROUND

Plaintiff describes herself as a "50-year-old, Christian, African-American." Compl. at 1. She brings this employment discrimination action against the Secretary of Labor under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (2000), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 1981.

From August 13, 2000 until her termination effective July 31, 2001, plaintiff worked as a Student Trainee (Pension Law Specialist) at the United States Department of Labor, Pension and Welfare Benefits Administration ("PWBA"), Office of Regulations and Interpretations, Division of Fiduciary Interpretations. Compl. at 1-2; Def.'s Mot., Ex. 2 (July 17, 2001 letter from Louis

Campagna, Chief, Division of Fiduciary Interpretations).  She was the only African-American person working directly under the Division Chief.  Compl. at 2.

Generally, plaintiff alleges that she was discriminated against on the basis of her age, race, color, and religion.  Compl. at 3.  Among other things, plaintiff alleges that defendant refused to hire her permanently as a Pension Law Specialist, violated provisions of the Student Career Experience Program Working Agreement governing her appointment, failed to compensate her at the proper rate of pay, subjected her to a hostile work environment, retaliated against her for filing a discrimination complaint, and otherwise treated her unfairly.  *See id.* at 3-6.

Plaintiff filed both an informal and a formal complaint at the agency level with the Department of Labor's Civil Rights Center ("CRC").  Def.'s Mot., Ex. 3-4 (Informal and formal complaints of discrimination, respectively).  Plaintiff's formal complaint alleged that defendant discriminated as follows:

- on the basis of race, color, and/or age when the agency failed to hire plaintiff for the position for which she originally applied;

- on the basis of race and/or color when the agency hired her as a student intern trainee;

- on the basis of race and/or color when it compensated her at a salary below the salary for which she qualified;

- on the basis of race and/or color when the agency allowed a hostile work environment;

- on the basis of race and/or color when the agency rated her, presumably on her performance;

- on the basis of race, color, sex, and/or age when defendant terminated plaintiff's employment as a student intern.

*See* Def.'s Mot., Ex. 4 (Formal Complaint of Discrimination).

The CRC Director notified plaintiff of her decision to accept only one issue for investigation: whether the Department discriminated against plaintiff on the basis of her race (African-American), color (Black), religion (Baptist) and age (47), when it terminated her as a Student Intern Trainee, GS-9. *Id.*, Ex. 6 (January 2, 2002 letter regarding CRC Case No. 01-11-014).[1]  Plaintiff sought to have additional issues investigated.[2]  *Id.*, Ex. 7 (Plaintiff's January 10,

---

[1]   According to this January 2, 2002 letter, the CRC Case Number is 01-11-014. *See* Def.'s Mot., Ex. 6. Elsewhere in the record, the case number appears to be 02-11-014. *See, e.g.,* Def.'s Mot., Ex. 8 (February 21, 2002 letter regarding CRC Case No. 02-11-014).

[2]   Plaintiff sought to include the following issues for investigation:

1. whether PWBA discriminated against plaintiff on the basis of her race, color, and/or age when it
    a. failed to hire her in the position for which she applied
    b. failed to provide her basic training
    c. compensated her at a salary level below that mandated by the student trainee program

2. whether PWBA discriminated against plaintiff on the basis of her race and/or color when it hired her as a student intern trainee

3. whether PWBA created a hostile work environment on the basis of plaintiff's race, age, religion and/or color when it made assignments containing racial connotations, cut her plant, and allowed "memorabilia reminiscent of the segregation period in the office"

4. whether PWBA discriminated against plaintiff on the basis of her race, color, gender and/or age when it terminated plaintiff's employment

5. whether PWBA discriminated against plaintiff on an unspecified basis when it rated her performance below that of co-workers

Def.'s Mot., Ex. 7. While most of these issues are substantially the same issues as those set forth in her informal and formal complaints, the failure to train and the payment beneath student trainee program requirements claims were new.

2002 letter to CRC's Director). The Director responded by letter, requesting additional information so that she could determine whether these claims would be accepted for investigation.[3]  *Id.*, Ex. 8 (A. Lockhart's February 21, 2002 letter). The Director advised plaintiff that her failure to respond within 15 calendar days could result in dismissal of the additional claims. *Id.*  Plaintiff did not respond with the information requested, and the CRC Director did not expand the scope of the investigation beyond the issue of plaintiff's termination.[4]  *Id.*, Stmt. of Material Facts ¶ 8, and Ex. 5 (Barry-Perez Decl.), ¶ 5. After the investigative report was written, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") of the Equal Employment Opportunity Commission ("EEOC"). Pl.'s Surreply, Ex. B (Pl.'s Brief) at 14. The ALJ granted the agency's unopposed summary judgment motion. Def.'s Mot., Ex. 11 (Summary Judgment Decision dated January 23, 2004). Plaintiff evidently appealed the ALJ's determination to the EEOC's Office of Federal Operations, which denied her request for

---

[3] The CRC Director stated that plaintiff's January 10, 2002 letter did not include sufficient information for her to determine whether the claims were presented timely. Def.'s Mot., Ex. 8 at 1. Noting the requirement that a claimant contact an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or the date a claimant became aware of the discrimination, the Director asked plaintiff to identify the dates on which all of the agency's discriminatory acts occurred or reasons why the 45-day period should be extended for each alleged agency action. *See id.*  In addition, the Director sought clarification on other details not supplied by plaintiff, such as the precise position defendant allegedly denied her for discriminatory reasons since the vacancy announcement for one position sought had been canceled, what the alleged salary disparity was that she suffered and when she learned of it, and the dates and types of training allegedly denied plaintiff. *Id.* at 2. These were not unreasonable requests.

[4] Plaintiff neither provides evidence nor claims that she ever responded to the CRC Director's request for additional information.

reconsideration.[5]  *See* Compl., Ex. (Excerpt from right-to-sue letter dated July 7, 2004); *see also* Def.'s Mem. of P. & A. ("Def.'s Mem.") at 4.

Plaintiff filed the instant civil action on August 6, 2004.[6]  She demands reinstatement, back pay, and benefits.  Compl. at 7.

## DISCUSSION

*A. Failure to Exhaust Administrative Remedies:*
*Counts I through IX*

Procedures for handling complaints of discrimination brought by federal government employees under Title VII and the ADEA are found in 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  *See* 29 C.F.R. § 1614.103.  Before the complainant may file a formal discrimination complaint, she first must consult a Counselor to try to resolve the matter informally.  29 C.F.R. § 1614.105(a).  Such contact must be made within 45 days of the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date.  29 C.F.R. § 1614.105(a)(1).  If the matter is not resolved informally, the complainant may file a formal complaint against the agency.  29 C.F.R. § 1614.105(d).  The agency must investigate the matter within 180 days of its filing.  29 C.F.R. § 1614.105(e)(2).  At the conclusion of the investigation, the complainant has the right either to request a hearing and decision from an administrative judge, or to request an immediate final decision from the agency.  29 C.F.R.

---

[5]  The record does not reflect the basis for the denial of plaintiff's request for reconsideration.

[6]  Plaintiff submitted her *pro se* complaint and application to proceed *in forma pauperis* to the Clerk of Court on August 6, 2004, the date on which the Clerk stamped the papers "received."  These papers did not appear on the Court's docket until August 18, 2004, after the Court had approved the *in forma pauperis* application.  *See* Dkt. #1-2.

§ 1614.108(f). A complainant may either appeal a decision to the EEOC, or file a civil action in federal district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

Exhaustion of administrative remedies is required for claims under both Title VII and the ADEA. *See Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998); *see also Rann v. Chao*, 346 F.3d 192, 196 (D.C. Cir.), *cert. denied*, 125 S.Ct. 35 (2004) (noting parties' assumption that claimant must pursue administrative remedies on ADEA claim at least during period for agency investigation).

### 1. Counts I, II, IV, V(a), V(f), and VI of the Complaint

Defendant argues that plaintiff's failure to supply information supporting certain of her discrimination claims warrants dismissal of those claims because she did not exhaust her administrative remedies. *See* Def.'s Mem. at 6-10.

Counts I, II, IV, V(a), V(f) and VI of the Complaint[7] correspond to the discrimination allegations included in plaintiff's informal and/or formal EEO complaints.[8]  *See* Def.'s Mot., Ex. 3-4.  These claims also correspond to the issues that plaintiff sought to add for investigation at

---

[7]    Counts I, II and IV of the Complaint read as follows:

Count I:    Among others, that the Agency intentionally discriminated against her on the basis of her race, age, color, and/or religion when the Agency did not hire he in the position for which she applied as a Pension Law Specialist, but instead did hire a white person.

Count II:   Among others, and including Count I, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color, and/or religion when the Agency hired her as a student intern instead of the position for which she originally applied; however, the Agency did not so treat other white applicant [sic].

Count IV:   Among others, and including Counts I - III, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color and/or religion in her rate of pay, but did not so treat and/or apply this to another white person.  Among other education and experience, [plaintiff] did have more than one year federal experience at the grade GS-9 level, which qualified her for at least the GS-11 rate of pay.

Count VI:   Among others, and including Counts I - V, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color, and/or religion when the Agency gave her work assignments containing racial and racist connotations . . ..

Compl. at 3-4.  Count V of the Complaint generally alleges that defendant discriminated against her on the basis of her race, age, color, and/or religion "when the Agency continuously subjected her to a hostile work environment."  Compl. at 4.  Under this general category, plaintiff alleges that "the Agency intentionally did or intentionally allowed . . . [t]he cutting down of [plaintiff's] plant which was located in her assigned work station" and "[t]he placement of an old dish soap container from a . . . site [reminiscent] of the 1960s racial segregation sit-ins."  Compl. at 4 (Count V(a), V(f)).  She also alleges this damage to her plant in her formal complaint.  *See* Def.'s Mot., Ex. 4 at 2.

[8]    Plaintiff alleges a hostile work environment in the formal complaint, but not in the informal complaint.  *See* Def.'s Mot., Ex. 3-4.

7

the agency level. *See id.*, Ex. 7. The CRC Director declined to investigate these claims, noting plaintiff's failure to supply additional information about them within 15 days of her receipt of the request for information. Plaintiff asserts that although she "does not challenge the CRC's need for information," both her informal and formal complaints already included the information that the CRC Director had requested in her February 21, 2002 letter, such that additional information was not necessary. Pl.'s Opp. at 4; Pl.'s Surreply at 5. Aside from plaintiff's unsupported assertion that CRC "gave [her] the 'run-around' every time that she tried to communicate with them," Pl.'s Surreply at 5, there is nothing in the record to suggest or to show any effort on plaintiff's part to address the CRC Director's request.

      Plaintiff had an obligation to respond to reasonable requests in the course of the agency's investigation of her discrimination claims. She did not fulfill that obligation, and, therefore, she did not exhaust her administrative remedies concerning those claims before filing them in this Court. *See Rann v. Chao*, 346 F.3d at 195-96 (upholding dismissal of claimant's age discrimination claim for his failure to submit signed affidavit to EEO investigator); *Woodard v. Lehman*, 717 F.2d 909, 914 (4th Cir. 1983) (reversing district court's refusal to dismiss employment discrimination claims for plaintiffs' failure to identify specific act of discrimination); *Jeffers v. Chao*, No. 03-1762, 2004 WL 3257069 *4-5 (D.D.C. Sept. 21, 2004) (dismissing claims arising from two discrimination complaints brought by plaintiff who failed to return investigators' phone calls, refused receipt of certified letters, and absented himself from interviews); *see also Shipp v. Waller*, 391 F. Supp. 283, 286-87 (D.D.C. 1975) (noting employees' affirmative duty to cooperate fully with person investigating discrimination claim of fellow employee).

Even if plaintiff timely had provided the CRC Director with responsive information, though, the hiring and pay claims in Counts I, II and IV are subject to dismissal for plaintiff's failure to contact a Counselor within the requisite 45-day period.[9]  A person who believes that she has been discriminated against on the basis of race, color, religion, sex or age must seek informal resolution of the matter by consulting an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory.  29 C.F.R. § 1614.105(a)(1).  This time period may be extended "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, [or] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits[.]"  29 C.F.R. § 1614.105(a)(2).  If a person fails to comply with these time limits, and fails to establish that tolling the limits is warranted, a subsequent civil action is subject to dismissal.  *See Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003).

According to her informal and formal discrimination complaints, plaintiff alleges that defendant failed to hire her for the position for which she originally applied in late 1999, and hired her instead as a student intern trainee on August 13, 2000.  *See* Def.'s Mot., Ex. 3.  She alleges that defendant "started [her] at a salary below the salary for which [she] was qualified"

---

[9]  The hostile work environment incidents alleged in Count V(a) and (f) regarding plaintiff's plant being cut and the placement of segregation-era memorabilia occurred on unspecified dates between August 2000 and June 2001.  Def.'s Mot., Ex. 4 at 2.  Plaintiff did not include these allegations in the informal complaint of discrimination she signed on August 16, 2001, a date which may have fallen within the 45-day period.  *See id.*, Ex. 3.  The allegations appeared for the first time in her formal complaint signed on November 7, 2001, a date outside of the 45-day period.  Nothing in the record reflects that plaintiff contacted an EEO Counselor timely with respect to these claims.

beginning on August 13, 2000. *Id.*, Ex. 3-4. The record demonstrates that plaintiff's first contact with a Counselor was one year later in August 2001. *Id.*, Ex. 3.

Plaintiff argues that defendant's discriminatory acts were not single episodes. Rather, she alleges that the acts were continuous, such that she could not have filed a complaint until she recognized the continuing acts of harassment as acts giving rise to a discrimination claim. *See* Pl.'s Opp. at 6-7. Her argument is unpersuasive. Plaintiff knew that she was hired as a Student Intern Trainee at GS-9 level compensation when she received an offer letter dated June 13, 2000. *See* Def.'s Mot., Ex. 1 (Plaintiff's Aff.) at 2-3. Even if defendant harassed plaintiff continuously during the course of her employment, this alleged harassment is not relevant to whether plaintiff timely contacted a Counselor with regard to the position and salary offered.

2. Counts III, V(b-e), and VII through IX[10]

Defendant argues that plaintiff's failure to file an EEO complaint with respect to the allegations in Counts III, V(b)-(e), VII, VIII, and IX of the Complaint warrants dismissal of these counts.[11] Def.'s Mem. at 10-11.

---

[10] In the Complaint, Count IX appears as "Count VIIII."

[11] These counts read, in part, as follows:

Count III: Among others, and including Counts I & II, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color and/or religion when the Agency refused and failed to follow the provisions of the Student Career Experience Program Working Agreement.

Count V: Among others, and including Counts I - III, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color and/or religion when the Agency continuously subjected her to a hostile work environment when the Agency intentionally did or intentionally allowed the following . . .

(continued...)

Plaintiff's formal complaint alleged discrimination based on race, color, religion, age, and sex when the agency (1) failed to hire her for the position for which she originally applied, and instead hired her as a student intern trainee; (2) compensated her at a salary level below the salary for which she was qualified; (3) provided a hostile work environment; (4) gave her a low

---

[11](...continued)
- b) Comment about [plaintiff] being a Detroit Michigan native but was not from the same "hood" as another white co-worker.
- c) Intimidating [plaintiff] when she posted a printout, from the Agency's website, about Dr. Martin Luther King, Jr. during the Agency's Black History Month celebration.
- d) Allowing and/or using an Agency contractor . . . to falsely befriend [plaintiff] and ridicule her and her religious beliefs, including one occasion when [the contractor] . . . brushed hard against her breast with his hand . . ..
- e) Constant and harassing conversations near [plaintiff's] assigned work cubicle about food and dogs that are black, and black dogs that are ugly, docile, and helpless to do anything about their circumstances . . ..

Count VII:    Among others, including Counts I - VI, that the agency intentionally and illegally discriminated against her on the basis of her race, age, color, and/or religion when the Agency monitored the e-mail that she sent to Father Alexei of Georgetown University Law Center . . . and when the Agency harassed [plaintiff] . . . by having loud discussion just outside her work cubicle about "people's" beliefs and whether Biblical stories are applicable to current events.

Count VIII:   Among others, including Counts I - VII, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color and/or religion when the Agency monitored and/or eavesdropped on her telephone conversations . . ..

Count [IX]:   Among others, and including Counts I - VIII, that the Agency intentionally and illegally discriminated against her on the basis of her race, age, color, and/or religion when the Agency disciplined her for using leave time for which the Agency had already approved.

Compl. at 3-6.

performance rating; and (5) terminated her.  *See* Def.'s Mot., Ex. 4 (Formal Complaint of Discrimination).  The agency accepted only one issue for investigation: plaintiff's termination.  *See id.*, Ex. 6.  Neither plaintiff's formal complaint of discrimination nor the issue accepted by the agency for investigation included the matters set forth in Counts III, V(b)-(e), VII, VIII, and IX.  Hence, because plaintiff did not exhaust these claims before filing the instant civil action, and they must be dismissed.  *See, e.g., Stewart v. Ashcroft*, 352 F.3d at 426 (dismissing discrimination claims for failure to exhaust administrative remedies because plaintiff did not contact EEO Counselor timely); *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995) (dismissing hostile work environment claim for plaintiff's failure to raise it with EEOC), *cert. denied*, 519 U.S. 811 (1996).

### B.  Failure to Show Discriminatory Reasons for Termination: Count X

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine disputes over material facts and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 255; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

### 1. Claims Under Title VII and the ADEA

The analytical framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), applies both to Title VII and ADEA claims. *See, e.g., Hall v. Giant Food Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying *McDonnell Douglas* framework for Title VII actions to ADEA claim). It is the plaintiff's initial burden in a Title VII action to establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas v. Green*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002). A plaintiff constructs a *prima facie* case of employment discrimination "by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella v. Mineta*, 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

If a plaintiff succeeds in making out a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case, and the plaintiff has an opportunity to present evidence that a factor such as race, age, or religion, not defendant's proffered reasons, was the true reason for the adverse employment action. *See Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. at 254-55; *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002).

Plaintiff's appointment as a Student Trainee (Pension Law Specialist) began on August 13, 2000. *See* Def.'s Mot., Ex. 2. Defendant evidently had no complaint about the quality of plaintiff's work. On her April 19, 2001 performance appraisal, defendant rated her overall performance "highly effective." Pl.'s Surreply at 3 & Ex. D. By June 2001, however, plaintiff had accumulated negative balances for both annual and sick leave (-4.75 and -106.75 hours, respectively).[12] Def.'s Mot., Ex. 2.; *see* Pl.'s Surreply, Ex. A (Campagna Decl.) at 2. The office policy regarding use of sick leave was that the employee must call in every day that she is away from the office. Campagna Decl. at 1-2. On June 6, 2001, plaintiff's immediate supervisor instructed plaintiff to call him directly when she was to be out of the office on sick leave. *Id.* at 2. During the week of June 25, 2001, plaintiff contacted her supervisor and informed him that she was having problems with her eye and was going to see a doctor. *Id.* Plaintiff neither came to work nor contacted her supervisor on any day thereafter through the July 1-14, 2001 pay period. *Id.*

Because of plaintiff's negative leave balances and her failure to comply with office policy for using sick leave, defendant found that plaintiff's conduct had a negative impact on the

---

[12] During the first six pay periods of plaintiff's appointment, from August 13 through November 4, 2000, she used 36.5 hours of combined annual and sick leave. Def.'s Mot., Ex. 9 at 2. During the next six pay periods, from November 5, 2001 through January 27, 2001, she used 80 hours of combined leave. *Id.* Over the next 5 pay periods, from January 28 through April 7, 2001, she used 72 hours of combined leave. *Id.* During the five pay periods immediately preceding her termination, from April 8 through June 16, 2001, she used 123 hours of combined leave.

office's ability to accomplish its mission. Def.'s Mot., Ex. 2. Accordingly, defendant terminated plaintiff's appointment effective July 31, 2001. *Id.*

Assuming that plaintiff has made out a *prima facie* case of discrimination, she has failed to rebut defendant's showing of legitimate, non-discriminatory reasons for the employment action taken. Plaintiff bears the ultimate burden of persuasion that defendant discriminated against her because of her age, race, color, or religion. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). Plaintiff produces neither affidavits, nor declarations nor other documentary evidence to attack defendant's race-neutral explanation of its reasons for terminating her. Nor does she present any further evidence of defendant's intentional discrimination against her. In short, plaintiff does not "show that a reasonable jury could conclude that she was terminated for a discriminatory reason." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002).

### 2.  Claim Under 42 U.S.C. § 1981

Plaintiff also brings this action under 42 U.S.C. § 1981, which in relevant part provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Id*. A race discrimination claim under Section 1981 requires proof of intentional discrimination. *See Gen. Bldg. Contractors Ass'n. v. Pennsylvania*, 458 U.S. 375, 391 (1982). Discriminatory animus may be shown through direct evidence, or with indirect evidence using the burden-shifting structure set forth in *McDonnell Douglas v. Green*, *supra*.

"The standards and order of proof in section 1981 cases have been held to be identical to those governing Title VII disparate treatment cases." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1413 n.7 (D.C. Cir. 1988) (citations omitted).  According to those standards, a plaintiff seeking to establish a *prima facie* Section 1981 case must show that "'(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  *Stella v. Mineta*, 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d at 452); *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d at 1413 n.7 ("To make out a claim under Section 1981 a plaintiff must demonstrate that he was (1) treated differently than others who were similarly situated (2) because of his race.").

Plaintiff offers no direct evidence that her termination came about because of intentional discrimination based on race.  Assuming that plaintiff has stated a *prima facie* case of discrimination under Section 1981, she has failed to rebut defendant's showing of a legitimate, nondiscriminatory reason for terminating her employment.  For the same reasons that her Title VII claim fails, the Section 1981 claim fails.

C.  Failure to State Discrimination Claims:<br>Counts XI and XII

In Counts XI and XII, plaintiff alleges that defendant discriminated or retaliated against her after she filed a complaint by failing to develop a factual record upon which to make findings on her claims, and to interview all obvious witnesses in connection with those claims.  Compl. at 6-7.  Neither of these claims is actionable.  Plaintiff's only cause of action under Title VII and ADEA is for discrimination.  These provisions "do[] not create an independent cause of action

for the mishandling of an employee's discrimination complaints." *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991); *see Nelson v. Greenspan*, 163 F. Supp. 2d 12, 18 (D.D.C. 2001) (dismissing claim that defendant failed to follow proper procedure in the processing of complaints which ultimately resulted in settlement agreement).

## CONCLUSION

The claims set forth in Counts I through IX must be dismissed for plaintiff's failure to exhaust administrative remedies, and those set forth in Counts XI and XII must be dismissed because these are not claims for which relief can be granted. With regard to Count X, there is no genuine dispute over material facts as to the nondiscriminatory reasons for plaintiff's termination, and defendant is entitled to judgment as a matter of law on this issue. Accordingly, the defendant's motion to dismiss or, in the alternative, for summary judgment, will be granted. A separate Order accompanies this Memorandum Opinion.

                /s/
     RICHARD W. ROBERTS
     United States District Judge

DATE: October 27, 2005